to help at In Re Guild Mortgage Company. Mr. Lentz, please proceed. Good morning, Your Honors. May it please the Court, Eric Lentz on behalf of the Appellant Guild Mortgage Company. As we believe that the Board made several errors in its analysis of the DuPont factors when it concluded that there was a likelihood of confusion between Guild's proposed mark, Guild Mortgage Company, and the registrant's prior mark, Guild Investment Management. I'd like to address my comments to the DuPont factors of the similarity of the marks, the services, and the trade channels and customer classes. With regard to the similarity of the marks, we believe that the Board didn't consider the marks in their entirety and it placed too much emphasis on the fact that the marks shared that common word, Guild. And the Board made at least two mistakes, we believe, in doing that. First, the Board failed to take into consideration the evidence that we introduced as to the weakness of the registrant's mark because it was based upon the surname of the registrant's founder, Monty Guild. We introduced evidence to show that the registrant heavily promotes the connection between Monty Guild and its mark because Monty Guild is an expert in global investing and when a consumer invests money with the registrant, he or she gives Mr. Guild full discretionary authority to invest the money as he sees fit. Thus, the intent, the evidence shows that the intent of the Guild element in registrant's mark is to promote the connection between Monty Guild and the registrant's mark. Okay, can I ask you a question? Each individual DuPont factor, like, for example, similarity of the marks, that's a fact question, right? Each individual one. So if the PTO finds the marks similar, that's a fact question and I have to review it for substantial evidence. Well, the determination by the PTO that the marks are confusingly similar is a question of law. I'm not trying to fight you, just answer my question. Isn't it true, because I mean the answer is yes, isn't it true that whether or not marks are similar under the DuPont factor is a question of fact for substantial evidence? Yes, Your Honor. Okay, but the overall weighing of the 13 factors which determines likelihood of confusion is a question of law that I get to do de novo, correct? Correct. So even if the PTO says two marks are similar, and I don't want to overturn fact findings because, you know, the record has evidence for it, I can decide how much weight that gets as part of the legal question because I'm the one doing the weighing of those 13 factors, can't I? Yes, Your Honor. So in many cases that I have found, it seems when we affirm a likelihood of confusion analysis, it is because either there are identical marks, not similar, and similar channels of trade and similar types of goods, or there are similar marks, not identical, but yet identical channels of trade or identical goods. Here it's like similar, similar, similar, which has to be overall weighed less under a de novo review, doesn't it, than if one of them had been identical as opposed to similar, right? I think I follow you, Your Honor. I think it's fair that you didn't follow me. So I guess what I'm trying to say is that in this case, unlike many others that I've seen in this job, everything seems at best similar, but nothing is identical the way it has been in many other cases. None of the factors one through three, it seemed to me, weigh very strongly in favor of a likelihood of confusion. They meet maybe the bare minimum threshold they need to be upheld on appeal, but that none of them weigh strongly as they have in other cases. Correct. I agree that the identity of the marks is similar. I disagree that the services are similar. I think they're totally dissimilar, and I also disagree. Well, but the thing is, even if they were similar, didn't the Board expressly find that there's a high level of sophistication in the consumers? You're talking about people getting mortgages and people financially investing in this case, and I realize this is not part of the articulation of goods, people with over a million dollars of net worth investing. I realize that's not part of the description in the trademark, but the Board found, as a matter of fact, that yes, these are very sophisticated individuals, and under that analysis, they'd be less likely to be confused, wouldn't they? That was our one highlight, yes, Your Honor. Did the Board actually say that the consumers would be highly sophisticated consumers? I don't believe the Board's decision said that, but the Board said that that factor as to consumer sophistication weighed in favor of not finding a likelihood of confusion. That's how the Board came down on that, and my analysis of that element as to the overlap of consumer classes, which I believe is related, and it's something that the Board never really considered, because what the Board did is the Board concluded, based upon the fact that it concluded that the services were similar, it then presumed that the trade channels were similar, and it presumed that the customer classes were similar, without actually analyzing the evidence regarding the trade channels and the customer classes. Isn't our case law pretty clear, whether it's the recent Detroit Athletic Company case, or Viterra, or Stoneline Capital? I mean, all these cases say that if there are no restrictions identified in the application or in the registration, then you presume all ordinary trade channels and all ordinary consumers, and it's not relevant to look at what the actual customers are for the registrant or the applicant. Isn't that what the case law says? I don't believe that that's what Stoneline says, Your Honor. I believe that – Okay. Well, then what is your conception of the law when there are no restrictions identified in the registrant's registration or the applicant's application when it comes to consumers and trade channels? I take that back, Your Honor. You're correct. There are cases – Viterra might be one of them – that says that when they're not restricted in the application registration, that you can presume that they move in the same ordinary classes in which these same services move. Right? Right. But that's the rub. And then there is evidence here that there are many third-party registrations of many companies that do offer both of these services, not only the applicant services on mortgage banking, but also the registrant service on investment advisory services. I disagree. And then isn't the case law pretty clear that when you have evidence like that, that that is evidence that supports the idea that not only are these similar services, but also that it's evidence that a consumer in the ordinary trade channels would expect that a company would offer both of the services? That is the law, but I disagree with that finding that there's similar services. Did the board in this case find that a consumer would expect, as Judge Chen said? I feel like he went a lot further than the board did, that a consumer would expect these to be offered from the same provider, or did the board simply acknowledge that there were providers that offered both? What was the board's finding on this? Well, I believe the board concluded that the services were related because you have, they're closely related because you have these third parties that seem to offer both mortgage banking services and sort of general financial advisory services. And where I disagree with the board's finding in that regard is that they didn't really look at what the services were as identified in the registration and the application. They went to this third-party evidence with these banks that sort of generally say, oh, well, these are investment, you know, financial services. And, you know, if you look at the services that are provided by the registrant, they're really specific and they're very narrow. And so I don't think that you... What are they? They're discretionary investment advisory services. And if you look at who their customers are, they're... No, but you can't look at who their customers are. That's not part of it. So discretion, their customers in particular, as opposed to anyone who would be offering discretionary, what is it called? Discretionary advisory services, which means... Why aren't they offering discretionary financial services? There's no evidence that they did. And that's part of the problem is I think that what the board did is they looked at this general evidence of what banks do and that they provide some sort of discretionary or some sort of investment advisory services in mortgage banking. And they concluded, oh, well, these banks do the same thing that the applicant and the registrant do. Well, while the mortgage half of that equation might be true, I don't think there was any evidence presented that the investment management half of that equation is true. And I think that was a mistake. I guess I don't understand because Judge Chen has... This argument I don't totally understand because Judge Chen made a point, which is that you have to accept what the registrant says is the class of goods or services that Mark's going to cover. And I'm not sure how I understand discretionary financial advising services. I'm probably not saying what it is right. I don't know that I understand how it differs from what the evidence shows the banks were offering. Oh, well, again, there is no evidence as to what the banks were offering. And that's part of the problem. But discretionary investment advisory services are those types of services where you basically give GILD Investment Management your investment and then you walk away from it. And they don't ask you, would you like to make this trade? Would you like to invest in these investments? Would you like to... It's like a blind trust. They just take care of it. I'm getting confused now. GILD Investment Management. Yes, Your Honor. The services identified in the registration is investment advisory services. And then we have multiple banks, third-party registrants, where among their listed services is quote-unquote investment advisory services, end quote, right? Is that correct? Financial services, yes. Okay. And then those same banks also provide something called mortgage banking services. Yes. Which is the exact quote of the services that your applicant is providing under the mark GILD Mortgage Bank. GILD Mortgage Company. Yes, Your Honor. Mortgage Company. So I guess why under the case law isn't that enough to demonstrate that in fact we have third-party registrants that are providing both services that are being offered by the two companies involved in this case? Well, because the services, the evidence shows that the services that are provided by GILD Investment Management are really a unique niche brand of services, and they're not general banking services. But that's not identified in GILD Investment Management's registration, right? They didn't go deeper into what they meant when they said investment advisory services under International Class 36. Correct. Okay. You're into your rebuttal time. I'm sorry. Did you have anything else you wanted to say to answer Judge Chen's question? Okay. Do you want to save the rest, and let's hear from the closing counsel? I will, Your Honor. Good morning. May it please the Court. I just wanted to answer a question that I think Judge Moore was directing to appellant's counsel. Even when the findings are that the market is similar, the goods are similar, trade channels are similar, customers are similar, that still all supports a likelihood of confusion. There's no... Well, of course it supports it, but it's not as strong a case as if there had been any one of those have been identical, is all I'm saying. Right. Exactly. I have to do the weighing de novo. Yes. And so while the Board may have made a finding that there's similar marks, you know, they're similar and then they're similar. You know what I'm saying here? Like there's degrees of similarity. The Board didn't say these are virtually identical. They're highly exact. They're very, you know, they found they're similar. So I have to then weigh that because didn't the Board also find that the fourth factor, the sophistication of the consumers weighed against the likelihood of confusion? Slightly against is what they found. Well, but that's not for them to decide because that's the weighing and isn't that the part I do... I mean, it is for them to decide in the first instance, but don't I review that de novo? You don't review their finding that the sophistication would weigh slightly against... Wait, wait. I don't get to weigh the factors? I don't get to weigh the factors de novo? You get to weigh that finding against the other findings that they've made. The marks are similar. The goods are similar. Classes of customers are similar. That sort of thing. And then you can re-weigh what they have found specifically, but that was a specific finding with respect to sophistication. Their finding is the sophistication weighs in favor of the applicant, correct? Slightly is what they said, yes. Yes, but that's the weighing and that's what I do de novo. So I don't think I understand. I would respectfully disagree with the fact that you would have the opportunity to re-weigh de novo, a finding on a particular DuPont factor. How much weight to give to each of the factors in the overall analysis is not something you think I get to do de novo as part of the likelihood of confusion analysis? I think maybe the way I could explain it best is to say what you get to do de novo as the court is to look at the finding that the marks are similar. Look at the finding that the goods are similar. Look at the finding that the channels of trade and classes of customers are similar. And look at the finding that the sophistication of the customers weighs slightly against those factors. Okay, so I don't think I agree with you as a matter of law. Can you point me to any case that says that I don't get to weigh the factors or that if the board says this weighs slightly as compared to this, which weighs more heavily, that I don't review that de novo? Are you aware of any case support for that proposition? Because that seems to me to be part of the weighing of the factors, which is what's done de novo. Are you familiar with any cases? Off the top of my head, I don't think I have something that – Well, then let's not worry about that. I have another question for you. What if the question was that the board found that the marks were highly similar? Would we then get to review the question of whether if the marks are highly similar de novo or would we have to look at that as a fact question that the board found not only that the marks are similar but that they are highly similar? That particular – that's almost exactly the same thing as what I was saying to Judge Moore. That is something that I think the court would have to review for substantial evidence. Except I agree with you that the court reviewed that for substantial evidence, and I actually agree with Judge Chen as well on that. But the problem for me is that they didn't find that the consumers were a little bit sophisticated. They found that sophistication weighed in favor of them. If they had made a specific fact-finding about sophistication, then I would agree that would be a question of fact I would give deference to. But they didn't make a fact – the way you're referring to is not a fact-finding about sophistication. It's about a fact-finding about how much weight to give sophistication in the overall analysis, and that is the legal question. Maybe what I can best do is to say that what you've got for the appellant's goods are mortgage banking services, and that's a very broad type of service. And as they say in their brief, I believe, it takes all sorts of customers. Anyone who wants a house is going to be looking for mortgage banking services. So they encompass both sophisticated people, presumably, and unsophisticated people in an entire range in between those two poles. So when you've got – and to think that discretionary – what he calls discretionary investment advisory services only comprises sophisticated investors is his presumption based on evidence that really can't be let into this sort of ex parte proceeding. So you have to look at the registration as well, which just says investment advisory services. And almost – that's almost as broad as the class of customers for mortgage banking services because so many people do investment services. So to focus – I think what you're looking at to try to get to the point where you're saying these are really sophisticated investors really isn't supported by the record. No, the fact-finding is consumers may exercise a certain degree of care in investing money. Right. And that was the fact-finding under the fourth factor, which has to do with sophistication of purchasing. Right. So that's the fact-finding. So then didn't they also argue repeatedly below that there is a very long time of contemporaneous use with no evidence of any actual confusion? They did make that argument. And that's factor number eight. And the conditions under which there has been concurrent use without evidence of actual confusion. Correct. And they made the argument to the board in particular on appendix page 420 that the examiner seems to have ignored this argument and their evidence about it because the examiner made no reference to it. Is that a fair characterization of page 420? I don't know what's on 420, but it was – and I'm happy to look at it. You can feel free to get it if you want. I mean, I'm just telling you what they said about – or what was stated about whether or not the examiner erred in failing to consider this evidence. Oh, this is the page of their brief where they made the argument. I agree they made the argument. That's all I'm saying is they made the argument. Yeah. So where did the board discuss DuPont factor number eight, in particular the length of time and the conditions under which there has been concurrent use with no evidence of actual confusion? They didn't expressly say, you know, we acknowledge that this argument was made. What they did say at the outset of their opinion was they looked at what they thought were the most relevant DuPont factors. This was on appendix 3. And then they said, and those other ones that we don't address, we find those to be neutral. Where did they say that? Appendix 3, I believe. The ones we don't address we find to be neutral. Right before the heading, the dissimilarity, dissimilarity remarks. That preceding sentence. Appendix 3? Yes. No. Wait, wait, wait. We consider the DuPont factors for which there were arguments and evidence, but you just admitted, and we pointed to page 420, they made arguments about factor number 8, actual confusion. And then they say the others we consider to be neutral. So when it says the others, aren't they contrasting it with the arguments and evidence that were made? I can't speak for the board. Clearly they didn't address it expressly. Wait, wait. Are you telling me that you read this sentence as, when they say the others, as including all other arguments and evidence they actually made but we don't address herein? I'm sorry, I don't quite. You just told me that the board said we're going to discuss these big factors and we're not going to discuss the other factors that they may have argued or made, but we find them all to be neutral. Isn't that what you said to me? No, this doesn't say that. No, it sure doesn't. Yeah. Exactly. The point is that they don't. Wait a minute. The board says we consider the DuPont factors for which there were arguments and evidence. So where is it that the board considered the arguments and evidence that were presented on DuPont factor 8? Because they presented it repeatedly and they even made the argument to the board. The examiner is overlooking all of this evidence. They did not make that argument. They did not make that finding. They did not address it specifically in the thing, but they did not have to as we pointed out in the report. Wait, let's pretend you're an appellate judge for a second. And let's pretend that an argument is made to an examiner repeatedly and the examiner issues an opinion that doesn't address that argument. And then let's pretend they then say one of their chief complaints to the board, one of their chief complaints in their brief to the board is we've presented important evidence on no evidence of actual confusion despite long-time concurrent contemporary use. And they expressly say, and we submit that the examiner erred in failing to consider this evidence on page 420. And then the board, likewise, doesn't address that argument or evidence anywhere in its opinion. Boy, that doesn't feel like a good job of appellate judging. Even in that hypothetical. That's not a hypothetical. That's actually what happened in this case. Well, I believe that the examining attorney did in fact address the lack of actual confusion and said that in an ex parte proceeding, you don't need to get into that because the other side is not here to give their view on actual confusion. Now, there are ways that they could have given their, there are ways that the appellate could have gotten into the actual confusion argument. Number one, it could have brought a, if it wanted to limit it to. So wait, time out for a sec. There are two elements dealing with actual confusion in the DuPont factors, aren't there? Length of actual time and instances of actual confusion. No. Factor number seven, I'll read it to you because I've got the opinion in front of me. The nature and extent of any actual confusion. Factor number eight, the length of time during and conditions under which there has been concurrent use without evidence of actual confusion. Right. Okay. So which of those two is it your position the examiner thought about and addressed? Let me point it out to Your Honor. I don't know. I mean, for me, let me just tell you, an administrative agency has an obligation under the APA to address the arguments that were presented and raised in its resolution. That is an APA requirement. And if they made an argument to the examiner and then they made it to the board and they complained it wasn't addressed, don't we have an APA violation? No. Why not? Because this court has said very clearly in the Marriott case in 1975 that evidence that there has been no confusion by the applicant in an ex parte proceeding is irrelevant. No, that's not what we said. We said generally irrelevant. But the reason we said generally irrelevant in that case is because that's factor number seven as opposed to factor number eight. There's two different factors. And both the examiner was addressing factor seven, and that opinion was addressing factor seven. Neither of them were addressing factor eight. And if there really are two different factors, and one of which goes to all this factual nature of the length of time and conditions under which there's been no concurrent use, why in the world would we say in an ex parte proceeding that's not available for consideration? Because the registrant is not here to give facts that it has about whether or not there should be or would be or likely be or is actual confusion. You need the other party here to be able to give their story and give the facts that they are aware of in order to adjudicate. I'm sorry. Maybe there's a little bit of confusion because these factors were articulated, were they not, in the N. Ray E. I. DuPont case? Right. Which is a CCPA case, an ex parte case, correct? That's correct. And nothing in that ex parte case suggested that we're going to list 13 factors to be considered, presumably in the context of this case, because courts don't usually do a lot of dicta. These are the 14 factors, but you're telling me that there are 13 factors that we have concluded two of them are completely irrelevant as opposed to at times irrelevant, and, in fact, that was only factor seven, that factor eight does not have to be considered by the board at all, even when evidence is presented? Is that what you're telling me? DuPont is a case in which, I believe it was Judge Rich, was trying to collect all of the likelihood of confusion factors that would apply both in ex parte and inter parte cases, and DuPont does apply in inter parte cases. You have to take into account that this is an ex parte proceeding in order to filter that broad and entirely both. Do you agree that the board did not address factor eight length of time during the conditions under which there has been concurrent use without any evidence of actual confusion? Yes, they did not address that. They did not address that. Right, and they did not have to, Your Honor. And you believe, do you agree, that if I were to think they did have to address it, that it would be an APA violation for them not to have done so? If I think that is a factor that is not legally irrelevant to the decision that they've rendered, that they did have an obligation under the APA to address it? If that is what this court believed, it may well be that, but I think that would be counter to a lot of case law in ex parte cases that has been rendered by this court that says that the likelihood of, I mean, the actual confusion evidence, which includes how long it's been going on, is simply not relevant unless you have the registrant here to give their facts that they are aware of on that particular thing. And he could have gone to the registrant and said, I'd like to get a consent from you. I don't think there's going to be a likelihood of confusion here. You're in this business. We're in the other business. Let's write down in parcel for the court exactly what we think we can do here. That was not done. That was open to them. They could have brought, for example— For me, the funny thing is I understand what we've said in cases like Majestic Drilling and that was repeated in Detroit Athletic, which is in an ex parte proceeding when we have uncorroborated self-serving testimony from the applicant that he or she is not aware of any actual confusion, that's given little weight in the overall confusion analysis. And so we've said that multiple times. But at least in those instances, the trademark board actually played with that factor a little bit and discussed it and then ultimately did not find when it did the overall ultimate analysis that that along with any other factors was persuasive enough to find the likelihood of confusion. Here in this instance, even though we may all know that as a matter of law in these certain kinds of ex parte contexts, this kind of uncorroborated testimony is given little weight. We still have to ask ourselves, shouldn't the board be the one that tells us why in this particular instance they did in fact consider this factor, this evidence, and yet ultimately, even with the addition of that factor and factor four or five, whichever one it is, it's not enough to overcome the finding of determination of likelihood of confusion in view of similarity of marks, services, and trade channels. That would be ideal if they were to actually do that in their opinions and specifically state that they had looked at that particular factor, which wasn't done here, but they did in fact say that they looked at all the other factors and considered them to be neutral, which is something I stated at the outset. I don't think they were trying to specifically say, we're ignoring this actual confusion evidence altogether. I think that they, in a way that maybe wasn't the best worded, were saying, we've looked at the other stuff and it's just neutral. I saw another statement in Detroit Athletic where this court has said, the trademark board doesn't need to always discuss every confound factor. It can just focus on the dispositive factors. What do you think we meant by that? If ordinarily you would expect that if certain arguments are made to a tribunal, that the tribunal has a responsibility to confront those arguments and address them somehow. In the face of this statement where apparently we have law that says you don't always have to consider every single factor that's branded. I think that that basically justifies what the board did here. They looked at the factors that they thought that the appellant raised that were the most substantial, addressed those, and then made its determination. And do you think that's true even where the appellant made only three arguments and that its second argument, which it spent most of its briefing on below, was that the examiner failed to address all of our evidence related to factor number eight? You really think that under those circumstances the APA is satisfied when the board, and I read the opinion as absolutely neglecting to recognize the argument was even made and have incorporated or addressed it wherein the two sentences that you point me to leave me only, the only reasonable reading of those that I can see is that they misunderstood that that argument was somehow raised and the evidence was presented. It doesn't fall into the others. You can respectfully disagree that's not relevant to me because I can read. So even under those circumstances you think there is no APA obligation to address the argument made when only three were made and this one was highlighted and the particular argument was the examiner's failing to address this evidence that we think is important? I would not say that that in the context of all of the overall case law that we've discussed here that guides the board and the examining attorney that no, that wouldn't be an APA violation. All right. I did want to discuss. Let's hear from opposing counsel. We're way beyond our time. We only have a few minutes of rebuttal. He went over by three minutes, so we'll give you a little extra leeway if you need it. But hopefully you don't have to take it all. Thank you, Your Honors. I'd like to cycle back to the earlier part of our discussion. Would you say the no lack of actual confusion argument was one of the spotlights of your brief to the board below? I think it was something that we strongly argued. Would you say it was one of the top three arguments you made? I don't know if it was one of the… I'm just looking at it now. I see it buried in the back of your brief. It was certainly… Sentenced at the back of your brief along with other factors. But, I mean, it looks like you were all about trade channels for pages and then services for pages and then similarity marks for pages. Well, we did certainly make the argument. Just to be clear, it's on page three of your brief, right? Judge Chin's buried at the back thing. I'm not sure what that means because the brief appears to be 24 pages long. So it's on page three of your brief. Is it not page 420 of the appendix? You've got to look all the way to the bottom. It's true. It's at the bottom. Yes. Of 24. Judge Chin is absolutely right. There are about four or five words down there that talk about a lack of actual confusion. Yes, Your Honor. And, I mean, we did make that argument because, of course, my client's been in business for almost 60 years and we've operated concurrently with a registrant for almost 50 years. Both of our companies originate in Southern California. So, I mean, it is an argument that is there and that we made. We did focus on the similarity of the marks primarily, and I believe that this court also can determine whether or not substantial evidence supported the findings that the marks were similar. And I think that what the board did in this case was it failed to consider our evidence of the weakness of the registrant's mark. And, you know, in doing that, you know, in doing that, you know, I believe that the board put too much emphasis on this common word, guild, that's used in both marks. And they didn't consider the weakness of guild. And so what happened is they simply dismissed the descriptive elements of the marks. And I think that was a mistake that the board made. And I have a hard time reconciling that with this court's decision in Juice Generation, where this court held that the board didn't adequately assess the weakness of the marks and it found that the board's analysis was inadequate because it didn't show any consideration of how the marks may convey a different meaning to the consuming public. And I think that's a similar situation that we have here because of the connection of guild investment management's mark with Monty Guild. I mean, that presents a totally different commercial impression to customers than, for example. I know that's your primary argument for why the word guild and guild investment is weak, but it doesn't follow for me why a consumer seeing guild investment and guild mortgage banking would think, oh, well, because it's Monty Guild, therefore, it's a weak mark. Why wouldn't that same consumer think Monty is now doing mortgage banking? Well, because the law is that marks based on surname are inherently weak. And so for that reason, the registrant's mark should be determined to be weak. Can you point me to a case that says when it comes to a 2D confusion analysis, if the registrant's mark is a surname or the dominant term is a surname, then it should be seen as something weak or particularly weak that doesn't, therefore, sufficiently suggest confusion? Well, yes, and because the mark is weak, it's entitled to a limited scope of protection. The main case that we cite is the Amstar case, but there are several others that we've cited in our brief as well. So, yes, I mean, that is a holding. And what the board did was... Which court came out with Amstar? Fifth Circuit Court of Appeals. Did you seek a coexistence agreement in this case? We didn't, Your Honor, at this point. Is there any reason why you didn't submit? No. No, we didn't reach out to Guild Investment Management. Any further questions? Okay, I think that we're out of time. I thank both counsel for their argument. The case is taken under advisement. That concludes our proceedings. Thank you. All rise. The Honorable Court is adjourned until tomorrow morning. It's o'clock a.m. Thank you. I'll wait for you here. That's always frustrating. Yeah, that happens a lot. Better be prepared. Yeah. Thank you. Thank you.